AMSDEN *et al. v.* SMITH.

(*Supreme Court, General Term, Fifth Department.*    October 21, 1892.)

ACTION ON NOTE—FRAUDULENT REPRESENTATION—BONA FIDE PURCHASER.

In an action on a note given for "Bohemian Oats," bought by the transferee thereof, where there is evidence tending to prove the defense that the note was procured by fraudulent representations, and also evidence for defendant, who has unnecessarily assumed the burden of proving plaintiff not a *bona fide* purchaser, from which the jury would be justified in finding that plaintiff paid nothing for the note, it is error to take the case from the jury by directing a verdict for plaintiff.

Exceptions from circuit court.

Action by C. Henry Amsden and Frank J. Amsden against Charles R. Smith on a note. A verdict was directed for plaintiffs, and defendant moves for a new trial on exceptions ordered to be heard in the first instance at general term. New trial granted.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Garlock & Beach*, for plaintiffs. *John Desmond*, for defendant.

LEWIS, J. This action was brought to recover upon a promissory note given by the defendant in payment of 20 bushels of Bohemian oats at $15 a bushel, delivered to him by the agents of a corporation by the name of the Bohemian Oat & Cereal Company, of Ypsilanti, Mich., and in consideration of a written agreement of the company to sell for the plaintiffs 40 bushels of oats, the following year, raised from the 20 bushels at $15 a bushel, the company to be paid by defendant 33⅓ per cent. commissions for selling. The note was dated November 6, 1886, for $300, payable to J. M. Orcutt or bearer, due in 12 months, with interest. The payee, Orcutt, was the agent of the company. The defendant interposed the defenses that the note was obtained from him by fraudulent representations, and that the plaintiffs were not *bona fide* holders for value. The plaintiffs produced the note, read it in evidence, and thereupon rested the case. The defendant introduced evidence tending to establish that he was induced to make the note by fraudulent representations of the agent of the company. The general plan of the company's operations in obtaining such notes is fully explained in the opinion of Justice BRADLEY in *Watson* v. *Blossom,* 4 N. Y. Supp. 489, decided by this court and afterwards affirmed by the court of appeals. 30 N. E. Rep. 865. It is not necessary to rehearse it here. It was held in that case that the defendant's evidence on the question of fraud should have been submitted to the jury. The defendant's evidence in this case tended quite as clearly to establish his defense of fraud as did the defendant's evidence in the *Watson Case.* The enterprise, as understood by all the persons connected with it, was mainly speculative. The principal inducements to defendant to give the note were the representations made to him by the agents of the company as to the munificent profits his neighbors had realized out of similar transactions with the company the year previous. If the company had kept faith with his neighbors the defendant thought it would also treat him fairly, and he believed the representations and gave the note. These representations were shown to be false. This evidence, under the doctrine of *Bank* v. *Deifendorf,* 123 N. Y. 192, 25 N. E. Rep. 402, placed the burden upon the plaintiffs of showing they were *bona fide* holders for value. Instead of relying upon the doctrine of that case, the defendant assumed the burden of the proof himself. He sought the evidence from adverse witnesses, but, notwithstanding that, he succeeded in obtaining sufficient evidence, and not too much, so that it became a question for the jury. The manner and circumstances under which Callamer became possessed of the note, and the transactions accompanying the delivery of it to the plaintiffs, tended strongly to show that neither Callamer nor the plaintiffs were innocent holders. The fair inference, and one the jury would

have been justified in adopting, was that the plaintiffs paid nothing for the note. They took it on the last day of grace, about noon. The circumstances of the alleged discount of the note by the plaintiffs as related by Callamer, and the subsequent transactions, tend to show that the transfer was colorable only. The case was left, taking the most favorable view of the evidence for the plaintiffs, in doubt as to whether either the plaintiffs or Callamer were *bona fide* holders for value. The case should have been submitted to the jury, and the direction of the verdict was error. A new trial should be granted, with costs to abide the event of the action.